FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAR 27 PM 2: 57

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MARK RICHARD SHODDY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 112-008 |
| | ) | (Formerly CR 108-169) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate confined to federal custody at the Federal Prison Camp in Atlanta, Georgia, has, through counsel, filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The matter is now before the Court for an initial review of Petitioner's motion as required by Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DISMISSED** and that this civil action be **CLOSED**.

### I. BACKGROUND

#### A. Criminal Proceedings

In December of 2008, a federal grand jury indicted Petitioner on four counts of offenses related to the possession and distribution of methamphetamine. United States v. Shoddy, CR 108-169, doc. no. 1 (S.D. Ga. Dec. 11, 2008) (hereinafter "CR 108-169"). Pursuant to a written plea agreement, Petitioner pled guilty to a single count of conspiring

to possess with intent to distribute and to distribute over 500 grams of a mixture of methamphetamine or over 50 grams of actual methamphetamine. Id., doc. nos. 67, 68. In exchange for his guilty plea, the government agreed to dismiss the remaining counts against him in the indictment, not to object to a recommendation by the probation office for a two-point offense level reduction for acceptance of responsibility, and, subject to certain conditions, to move for an additional one-point reduction for acceptance of responsibility. Id., doc. nos. 67, pp. 1-2. The plea agreement further provides:

> The government shall advise the Court of the extent and value of any information, cooperation, or assistance in the investigation and prosecution of others provided by [Petitioner].
> If [Petitioner's] cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 and under the policies of the United States Attorneys Office for the Southern District of Georgia warrants the filing of a motion for downward departure from the applicable sentencing guideline range and departure below any applicable statutory mandatory minimum sentence. If [Petitioner's] cooperation is completed or likely to be completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e) and Rule 35, Fed.R.Crim.P. and under the policies of the United States Attorneys Office for the Souther District of Georgia warrants the filing of a motion for downward departure from the applicable sentencing guideline range and departure below any applicable statutory mandatory minimum sentence, within one year of the imposition of the sentence.

Id. at 2-3.[1]

On July 31, 2009, the Honorable J. Randal Hall, United States District Judge, held a Rule 11 hearing, at the conclusion of which he accepted Petitioner's guilty plea. Id., doc.

---

[1] In addition, the Court notes that Petitioner's plea agreement contains a "limited waiver of appeals" provision, which included a waiver of "the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground . . . ." CR 108-169, doc. no. 67, p. 5.

2

nos. 66, 91. Following the Rule 11 hearing, the government filed a "Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)," which indicated that Petitioner had cooperated with the government by providing information that led to the search of the home of James Braswell, Petitioner's Co-Defendant in CR 108-169 whom he had supplied with methamphetamine. The government characterized Petitioner's cooperation as "Minimal to Moderate" and requested that Judge Hall depart downward from the Sentencing Guidelines range as he deemed appropriate in imposing Petitioner's sentence. Id., doc. no. 84. In addition, the Probation Officer prepared a Presentence Investigation Report ("PSI") following the Rule 11 hearing. Petitioner indicates that the PSI provided for a two-point increase in his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because of his possession of a firearm. (Doc. no. 1, p. 7.)

On January 15, 2010, Judge Hall held a sentencing hearing. Assistant United States Attorney ("AUSA") Patricia Rhodes appeared on behalf of the government at the hearing, and Petitioner was jointly represented by retained counsel James Pete Theodocion and Richard Allen Ingram, Jr. Petitioner raised no objections to the PSI, and Judge Hall adopted the PSI's factual statements and conclusions as to the advisory range under the Sentencing Guidelines. CR 108-169, doc. no. 92, p. 4. Consistent with the plea agreement, the government moved for an additional one-point reduction in offense level for Petitioner's acceptance of responsibility. Id. at 5. Judge Hall granted that motion, which resulted in a total offense level of 31 and a criminal history category of I. As a result, the advisory range under the Sentencing Guidelines was 120 to 135 months of imprisonment. Id.

Judge Hall also addressed the government's motion for downward departure pursuant to U.S.S.G. § 5K1.1 at the sentencing hearing. AUSA Rhodes provided a summary of the facts pertaining to Petitioner's cooperation with the government. As stated in the motion, AUSA Rhodes indicated that Petitioner had provided information that led to a search of the residence of Mr. Braswell. Id. at 6. AUSA Rhodes specified that the government had characterized Petitioner's assistance as "minimal to moderate," as opposed to some higher level, primarily because the information Petitioner provided led "down the chain of... users and suppliers," rather than up the chain, in that the information pertained to an individual whom Petitioner supplied with methamphetamine. Id. at 6. Judge Hall then asked Mr. Theodocion and Mr. Ingram if they "want[ed] to add anything to [AUSA Rhodes'] discussion about the extent of [Petitioner's] cooperation[.]" Id. Both of Petitioner's attorneys took advantage of this opportunity and spoke at length regarding the details of Petitioner's cooperation with the government. See id. at 6-13. In addition, Judge Hall heard testimony from Petitioner, his girlfriend, and his mother, as well as arguments from both his attorneys, regarding mitigation of Petitioner's sentence. See id. at 13-38.

Taking all of the relevant information into account, Judge Hall sentenced Petitioner to a 102-month term of imprisonment, and a judgment reflecting this sentence was entered on January 19, 2010. Id., doc. no. 86. Judge Hall specifically noted that he had departed below the applicable Sentencing Guidelines range based on Petitioner's cooperation and the government's § 5K1.1 motion. Id., doc. no. 92, p. 39. Petitioner did not file a direct appeal or make any other attempt to challenge his conviction or sentence until he filed the instant § 2255 motion, through new counsel, on January 19, 2012.

### B.     Petitioner's § 2255 Motion

In his § 2255 motion, Petitioner asserts that AUSA Rhodes harbored an improper bias against him because of her animosity toward one of his retained attorneys, Mr. Ingram. In particular, Petitioner reports that, not long before he was sentenced, Mr. Ingram had raised allegations of prosecutorial misconduct against AUSA Rhodes in a separate criminal case, United States v. Tapp, CR 107-108 (S.D. Ga. Nov. 20, 2008) (hereinafter "CR 107-108"),[2] which resulted in her removal from that case by the United States Attorney for the Southern District of Georgia and an investigation by the Department of Justice's Office of Professional Responsibility ("OPR").[3] (Doc. no. 1, pp. 14-16.)

In Ground One of his § 2255 motion, Petitioner claims that AUSA Rhodes subjected him to "vindictive prosecution" and engaged in "prosecutorial misconduct" in that she

---

[2]In CR 107-108, Mr. Ingram filed a "Motion for Specific Performance as to a Downward Departure, . . . or, in the Alternative, . . . Motion to Dismiss the Indictment, Based upon an Egregious Pattern of Outrageous Government Misconduct." CR 107-108, doc. no. 40. In that motion, Mr. Ingram argued, *inter alia*, that AUSA Rhodes acted improperly by retracting her promise to file a motion for downward departure based on his client's cooperation and by threatening his client with a sentencing enhancement and prosecution by South Carolina authorities if she did not plead guilty by a certain date. Mr. Ingram also argued that AUSA Rhodes acted improperly by contacting his client and scheduling her to appear and testify before a grand jury without notifying him or obtaining his consent. See id.

The Honorable William T. Moore, Jr., then-Chief United States District Judge, denied the motions in an Order issued on June 4, 2008. Id., doc. no. 73. Judge Moore reasoned that AUSA Rhodes had "presented [Mr. Ingram and his client] with a difficult choice and a strict deadline for agreeing to a guilty plea," conduct which, while perhaps harsh, was "insufficient to rise to the level of a constitutional violation warranting a dismissal of the indictment." Id. at 5. Judge Moore found that AUSA Rhodes' contact with Mr. Ingram's client without his knowledge, although improper and justifying her removal from this case, likewise did not warrant granting the relief sought. Id. at 51-52.

[3]Petitioner states that Mr. Ingram cooperated in the investigation of AUSA Rhodes, although he is unaware of the results of such investigation. (Doc. no. 1, pp. 15-16.)

breached the plea agreement by failing to disclose all the facts pertaining to Petitioner's cooperation at sentencing.[4] (Id. at 4, 18-22.) In Ground Two, Petitioner asserts that, "whether or not AUSA Rhodes engaged in prosecutorial misconduct, the government breached the plea agreement . . . by failing and refusing to inform the Court, prior to sentencing, of all the facts concerning the nature and extent and value of [Petitioner's] cooperation . . . ." (Id. at 5, 22-23.) In Ground Three, Petitioner asserts that his trial counsel provided ineffective assistance in that, *inter alia*, they failed to object to the firearm enhancement in the PSI, the government's failure to provide all the facts related to his cooperation, and the government's refusal to file a motion for a sentence reduction pursuant to Federal Rule of Criminal Procedure 35(b). (Id. at 8, 10-12.) In Ground Four, Petitioner argues that the government refused in bad faith to file a Rule 35(b) motion to reduce his sentence. (Id. at 9, 12-13.) Petitioner requests that the Court conduct a hearing on the § 2255 motion and allow him "to conduct appropriate discovery." Ultimately, Petitioner contends that he is entitled to a new sentencing hearing with a different prosecutor, in conjunction with which the government must comply with his plea agreement by presenting all facts concerning his cooperation and file a Rule 35(b) motion for a sentence reduction. (Id. at 13-14.)

Addressing the timeliness of the instant § 2255 motion, Petitioner avers that his "claims could not have been brought or discovered earlier, because . . . [his trial counsel] never really or fully informed him about all these matters, including all the AUSA

---

[4]Petitioner does not provide the facts of his cooperation allegedly omitted by the government because they "pertain to and involve ongoing criminal investigations," although he offers to provide such information at a later time if necessary. (Doc. no. 1, p. 14 n.1.)

misconduct and OPR investigation, and [Mr. Ingram's] role in disclosing it...." (Id. at 19.)

In an affidavit filed in conjunction with his § 2255 motion, Petitioner further states:

> Although I was generally aware that some sort of problem existed between my lawyer, Richard Ingram, and the prosecutor, at the time of my sentencing, I had no clear knowledge, and no real idea, about all the serious problems between Mr. Ingram and the prosecutor in [CR 107-108], and I did not know about his cooperation against her in an internal investigation of her, until my mother and fiancé recently visited me in the past month and told me about it.

(Id. at 29.)

## II. DISCUSSION

28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions. According to the AEDPA, the statute of limitations period shall run from the latest of four possible dates:

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). As no direct appeal was filed in Petitioner's criminal case, his conviction and sentence became final 14 days after judgment was entered, in or around

7

February of 2010. See Fed. R. App. P. 4(b)(1). Assuming Petitioner's AEDPA clock began running on this date, the instant motion, filed nearly two years later, is untimely unless some tolling mechanism applies.

Petitioner attempts to avoid dismissal for untimeliness, arguing that he did not know the details of the conflict between Mr. Ingram and AUSA Rhodes in CR 107-108 until his mother and fiancé provided him with such information approximately one month before he filed the instant § 2255 motion. (Doc. no. 1, p. 29.) According to Petitioner, the details of the conflict between Mr. Ingram and Ms. Rhodes in CR 107-108 constitute newly discovered facts supporting his claims, and Petitioner asserts that he could not have discovered such facts sooner through the exercise of due diligence because his "[trial] counsel never really or fully informed him about these matters." (Id. at 19.) Thus, Petitioner contends that, pursuant to § 2255(f)(4), the statute of limitations for his motion did not begin to run until his mother and fiancé provided the new information about a month before he filed his § 2255 motion.

The Eleventh Circuit has explained that the one-year limitations period of § 2255(f)(4) is triggered not when a petitioner actually discovers the facts supporting his claim, but "when the facts *could have been* discovered through the exercise of due diligence." Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002). "Nonetheless, the court should begin the timeliness inquiry under § 2255(4) by determining whether the petitioner exercised due diligence because, . . . if he did so, the limitation period would not begin to run before the date he actually discovered the facts supporting the claim." Id. In this regard, a petitioner is not required to use "the maximum feasible diligence, but only 'due,' or reasonable diligence" Id. at 712. "Due diligence therefore does not require a prisoner to undertake repeated exercises

8

in futility or to exhaust every imaginable option, but to make reasonable efforts." Id. That said, if prompt action would have produced the facts supporting the claim, a court should not apply § 2255(f)(4). See Johnson v. United States, 544 U.S. 295, 311 (2005) (holding that § 2255(f)(4) was "unavailable" where "there [was] every reason to believe that prompt action would have produced [the factual basis for the claim] well over a year before [the petitioner] filed his § 2255 petition").

Here, it is apparent based on Petitioner's allegations that he did not exercise due diligence. Although Petitioner knew during his criminal proceedings that "some sort of problem existed between [Mr. Ingram and AUSA Rhodes]," (doc. no. 1, p. 29), he did not take any actions to discover the facts that he now contends entitle him to statutory tolling under § 2255(f)(4). Rather, he alleges that his mother and fiancé informed him of the details of the conflict between Mr. Ingram and AUSA Rhodes about a month before he filed the instant motion,[5] and the only reason he provides for being unable to discover this information sooner is that his trial counsel "never really or fully informed him about all these matters." (Id. at 19.) In other words, according to Petitioner's own allegations, he took no action to discover the information in question despite knowing that one of his attorneys, with whom he was in contact during his criminal proceedings, was involved in a conflict with AUSA Rhodes in a separate case. (Id. at 29.) For example, Petitioner does not allege that he asked Mr. Ingram about the conflict with AUSA Rhodes and met with resistance in obtaining a

---

[5]Petitioner does not explain how his mother and fiancé learned of these facts. (See doc. no. 1.)

9

complete answer, but rather indicates only that Mr. Ingram did not volunteer an exhaustive account of all the details involved. (See doc. no. 1.)

Indeed, Petitioner does not allege any impediment to discovery of the information that he now characterizes as new facts supporting his habeas claims. Rather, Petitioner remained utterly passive, waiting for the information to make its way to him. This course of action falls short of the type of "reasonable efforts" needed to demonstrate due diligence. Compare Aron, 291 F.3d at 710-11 (finding petitioner had demonstrated due diligence in discovering counsel's failure to raise certain issues on appeal because he repeatedly attempted to obtain such information from his counsel and the appellate court and was impeded from doing so by his counsel's unresponsiveness and the appellate court's refusal to accept his *pro se* filings), with Tucker v. United States, 249 F. App'x 763, 765-766 (11th Cir. 2007) (*per curiam*) (finding that petitioner was not diligent in discovering his counsel's failure to file a direct appeal where petitioner failed to contact his counsel to discuss the status of his appeal and made no prompt effort to contact the appellate court to ascertain the status of his appeal), and Frederick v. McNeil, Case No. 06-80278-CIV, 2010 U.S. Dist. LEXIS 100539, at *4-5 (S.D. Fla. Sept. 17, 2010) (finding § 2254[6] petitioner was not diligent in discovering the fact that a witness had perjured himself upon prompting by the prosecutor because he "never even tried" to obtain such information, despite knowing that the witness would testify at his trial and being present during the purportedly perjured testimony).

---

[6]AEDPA's limitations provisions for § 2254 actions are highly analogous to the limitations provisions that apply in § 2255 actions. See 28 U.S.C. § 2244(d)(1); see also Gilbert v. United States, 640 F.3d 1293, 1317 (11th Cir. 2011) (*en banc*) (noting similarity between § 2254 and § 2255 proceedings).

Because due diligence is lacking, the determinative inquiry becomes "whether, with the exercise of due diligence, [Petitioner] could have discovered [the facts in question] on or before [January 18, 2011] (one year prior to the date the instant motion was filed)." Williams v. United States, Case No. 10-22897-CIV, 2011 U.S. Dist. LEXIS 52476, at *7 (S.D. Fla. Apr. 25, 2011); see also Aron, 291 F.3d at 711 n.1 (noting that, when a § 2255 petitioner does not exercise due diligence, the court is "required to speculate about the date on which the facts could have been discovered with the exercise of due diligence"). Of note in this regard, the "new facts" alleged by Petitioner occurred in conjunction with the criminal proceedings in CR 107-108, which predated Petitioner's sentencing. Indeed, because Mr. Ingram filed a motion in CR 107-108 based on AUSA Rhodes' conduct, which the government responded to and Judge Moore ruled on in an extensive order, see CR 107-108, doc. nos. 40, 43, 73, the majority of the information Petitioner offers as newly discovered information was documented in the public record prior to his sentencing. Moreover, as noted previously, despite Petitioner's knowledge of a prior conflict between Mr. Ingram and AUSA Rhodes, he does not allege that he made any attempt to discover the details the conflict, including the simple act of asking Mr. Ingram to provide him with such information. Nor does Petitioner allege any specific impediment to the discovery of such information. Accordingly, the Court concludes that "there is every reason to believe that prompt action would have" resulted in discovery of the information Petitioner offers as "new facts" more than a year prior to the filing of the his § 2255 motion. Johnson, 544 U.S. at 311. As a result, the instant § 2255 motion is not timely under § 2255(f)(4).

Aside from the issue of due diligence, the Court notes that the primary factual basis of the majority of Petitioner's substantive habeas claims consists of information that he was aware of before his judgment became final. For example, Petitioner asserts that the government breached the plea agreement by omitting facts regarding Petitioner's cooperation at sentencing; he also asserts that his trial counsel provided ineffective assistance by failing to object to such omission and by failing to raise various other objections at sentencing. (See doc. no. 1, pp. 4-7.) The primary factual basis for these claims is the failure to act by the government and Petitioner's trial counsel during sentencing, which Petitioner was undoubtedly aware of given his presence at the sentencing hearing. The details of the conflict between Petitioner's counsel and the government prosecutor in a separate case, on the other hand, are not part of the factual crux of these claims. Petitioner should not be permitted to use the later discovery of these ancillary facts to avoid the applicable statute of limitations. See McAleese v. Brennan, 483 F.3d 206, 214-15 (3d Cir. 2007) (in § 2254 case, rejecting the notion that a petitioner may "delay the triggering of the running of the statute of limitations until all evidence in support of a petition is secured" and holding that a petitioner qualifies for statutory tolling based on the discovery of new facts only if they are "vital facts" that "make up his claims" as opposed to "evidence that might support his claims").

Additionally, the Court notes that the Eleventh Circuit has held that the statute of limitations in § 2255 may be subject to equitable tolling. Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003), aff'd, 544 U.S. 295 (2005). Equitable tolling can be applied to prevent the application of the AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. ___, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson, 340 F.3d at 1226. The petitioner bears the burden of proving his entitlement to equitable tolling, Jones v. United States, 304 F.3d 1035, 1040 (11th Cir. 2002), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir. 2006) (citing Pace, 544 U.S. at 418-19).

Here, Petitioner does not make any argument for equitable tolling, and no basis for such tolling is apparent upon an examination of the petition or the record. Moreover, Petitioner fails to demonstrate diligence with regard to equitable tolling for the same reasons set forth previously with regard to § 2255(f)(4). Accordingly, the Court concludes that there is no basis for equitably tolling the AEDPA's one-year statute of limitations.

Finally, the Court notes that consideration of an otherwise untimely petition for federal habeas relief may be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has resulted in the conviction of someone who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1985); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a petitioner seeking to invoke it must "show that it is more likely than not that no reasonable juror would have convicted him." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S.

298, 327 (1995)). "In addition, 'to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'" Id. (quoting Calderon v. Thompson, 523 U.S. 538, 559 (1998)); see also Rozzelle v. Fla. Dep't of Corr., ___ F.3d ___, 2012 U.S. App. LEXIS 4114, at (11th Cir. 2012) ("To support a claim of actual innocence, a time-barred [habeas] petitioner must present 'new reliable evidence' such that it is more likely than not that 'no reasonable juror would have convicted him in light of the new evidence.'" (quoting Schlup, 513 U.S. at 327)).

Here, Petitioner has not presented any new evidence to suggest that he did not commit the offense to which he pled guilty such that no reasonable juror would have convicted him. Indeed, his claims focus exclusively on alleged errors at sentencing, and Petitioner emphasizes in his § 2255 motion that he "fully accept[s] responsibility for [his] crime." (Doc. no. 1, p. 29.) Therefore, the actual innocence exception does not save the instant petition from being time-barred under the AEDPA. See McKay v. United States, 657 F.3d 1190, 1200 (11th Cir. 2011) (noting that actual innocence exception is inapplicable to claims that raise legal challenges based on alleged errors at sentencing); see also Goodloe v. United States, 448 F. App'x 980, 981 (11th Cir. 2011) (*per curiam*) ("[T]he actual innocence exception requires factual innocence, not mere legal innocence, and enhanced sentencing is a matter of legal, not factual, innocence.")

In sum, Petitioner fails to demonstrate that the AEDPA statute of limitations began to run at any point within the one-year period preceding the filing of his § 2255 motion. Moreover, Petitioner has not satisfied the requirements for equitable tolling, and he has not

presented any arguments sufficient to support a claim of actual innocence. Accordingly, the instant motion is time-barred under the AEDPA's one-year statute of limitations.[7]

Finally the Court notes that Petitioner requests that the Court allow him to conduct unspecified discovery and hold an evidentiary hearing on his motion. However, as the Court has explained, even assuming the truth of the allegations in the instant § 2255 motion, the motion is nevertheless time-barred. As a result, Petitioner has not shown cause for the Court to allow discovery, and he is not entitled to an evidentiary hearing. See Rule 6 of the Rules Governing Section 2255 Proceedings For the United States District Courts (providing that a party may pursue discovery in a § 2255 proceeding only upon authorization of the Court and for "good cause"); Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) ("[I]f a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing."); Aron, 291 F.3d at 714-715 (holding that a § 2255 petitioner is entitled to a hearing only if he "alleges facts that, if true, would entitle him to relief" (quoting Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir. 1989)).

---

[7]Because the Court concludes that the instant motion is time barred, it does not reach the merits of Petitioner's claims. While the majority of Petitioner's claims are likely unavailable outside the context of a § 2255 motion, the Court notes that § 2255 is not the only procedural vehicle for Petitioner's claim that the government improperly failed to file a motion for downward departure under Rule 35(b). Indeed, criminal defendants often bring such claims in the form of a motion to compel the government to file a Rule 35(b) motion. E.g., United States v. Dunlap, 329 F. App'x 869, 871 (11th Cir. 2009) (*per curiam*). Because the Court's analysis of the instant motion is based on limitations provisions that apply only in the context of § 2255 motions, nothing in this Report and Recommendation should be construed as a commentary on the potential merit of a motion seeking a sentence reduction that does not arise under § 2255.

### III. CONCLUSION

Based on an initial review of the petition as required by Rule 4 of the Rules Governing Section 2255 Proceedings, the Court **FINDS** that Petitioner's motion is time-barred by the applicable one-year statute of limitations. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DISMISSED** and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 22th day of March, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE